## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STACEY DeLAURA | : |
|     Plaintiff | :    JURY TRIAL CLAIMED |
| | : |
| VS. | :    C.A. No. |
| | : |
| SALVE REGINA UNIVERSITY and | : |
| AMANDA MINOR | : |
|     Defendants | : |

## COMPLAINT

## JURISDICTION AND VENUE

1. This is a Complaint seeking vindication of Plaintiff's right to a school environment free of discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act, as well as the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-87-1 *et seq.* (the Rhode Island Civil Rights of Persons with Disabilities Act), and R.I. Gen. Laws § 42-112-1 *et seq.* (the Rhode Island Civil Rights Act). Plaintiff also brings common-law torts for breach of contract and tortious interference with contract and economic advantage.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § § 1331 and 1367.

## PARTIES

3. Defendant Salve Regina University ("Salve Regina") is a non-profit corporation duly organized under the laws of the State of Rhode Island, with a principal place of business in Newport, Rhode Island.

4. Defendant Amanda Minor, at all times relevant hereto, was an Associate Professor at Salve Regina, and on information and belief resides in the State of Rhode Island.

5. Plaintiff, Stacey DeLaura, applied to and was accepted into Salve Regina's Holistic Counseling Master's degree program, beginning in 2018.

**GENERAL ALLEGATIONS**

6. Plaintiff at all times met all requirements for admission into and retention in the Holistic Counseling program, and completed all requirements in a satisfactory if not exemplary fashion.

7. Beginning in or about 2018, Plaintiff began to suffer debilitating migraine attacks about once or twice a month.

8. When Plaintiff suffered from said migraines, said migraines substantially limited Plaintiff's ability to engage major life activities, such as concentrating, thinking, working, eating, sleeping, balancing, and learning.

9. Plaintiff was prescribed medication to control or mitigate or said migraine attacks.

10. The medication consisted of a three-tier regimen. Plaintiff took a daily medication to prevent the migraine attack. If that was not successful, Plaintiff would take a second type of medication to stop the migraine attack. If that was not successful, Plaintiff would take a third type of medication.

11. The second and third-tier medications sometimes caused the Plaintiff to become tired or drowsy.

12. On April 9, 2019, Plaintiff wrote to the Director of the Holistic Counseling, Dr. Nancy Gordon, and put Dr. Gordon on notice of her migraine problems.

13. Notwithstanding Plaintiff's migraine attacks, and the medication, Plaintiff continued to successfully pursue her course of studies at Salve Regina, attaining a grade point average of about 3.8.

14. By the spring of 2021, Plaintiff was nearly completed with the work necessary to obtain her Master's degree in Holistic Counseling.

15. To complete her Master's degree in Holistic Counseling, Plaintiff first needed to complete a practicum over the summer of 2021, and then two internships over the 2021-2022 academic year.

16. Plaintiff also planned to take one final academic class over the summer of 2021.

17. If Plaintiff successfully completed the practicum and internship, she would graduate in the spring of 2022.

18. Plaintiff planned to relocate after graduation so that she could be closer to her parents.

19. Plaintiff's parents were advancing in years, and needed additional support that Plaintiff would not be able to effectively provide if she remained in Rhode Island.

20. In May, 2021 Plaintiff began her practicum experience at East Coast Mental Wellness.

21. Defendant Minor was the professor who supervised the practicum.

22. Tracy Young, who was employed by East Coast Mental Wellness, was the on-site practicum supervisor.

23. Plaintiff attended a number of practicum sessions at East Coast Mental Wellness, which were successful.

24. On or about the evening of June 2, 2021, Plaintiff attended the classroom portion of said practicum, which was taught by Defendant Minor.

25. Said June 2, 2021 evening class session was held by ZOOM.

26. On June 2, 2021, and continuing into said June 2, 2021 evening class, Plaintiff had been suffering from a migraine attack, for which she was taking her upper-tier medications.

27. Although tired and ill as a result of her migraine attack and the medication, Plaintiff was still able to actively participate in the class, and did so despite the great effort that participation took.

28. On or about June 4, 2021, Defendant Minor e-mailed Plaintiff requesting a ZOOM meeting.

29. Said ZOOM meeting with Defendant Minor took place on June 8, 2021.

30. Defendant Minor had given no indication as to what the June 8, 2021 meeting was about, and Plaintiff assumed that it would be about the practicum.

31. Prior to this June 8, 2021 meeting, Plaintiff had been given no indication that there were any issues regarding her behavior and/or performance.

32. During the June 8, 2021 meeting, Defendant Minor expressed concerns that Plaintiff had seemed "tired" and "not herself" during the June 2, 2021 ZOOM class, and that she had seemed "off."

33. Defendant Minor gave no specifics about her belief that Plaintiff had seemed "tired" and "not herself" during the June 2, 2021 ZOOM class, other than mentioning "something you replied to Alex about."

34. Plaintiff disclosed to Defendant Minor that she had been taken medication for her migraines, and that that medication could make her drowsy.

35. Defendant Minor stated that Plaintiff had been "impaired," and that Defendant Minor would therefore need to speak to Dr. Gordon.

36. Plaintiff then consulted with her classmates about her demeanor and appearance in class on June 2, 2021.

37. Plaintiff's classmates assured Plaintiff that she had not appeared impaired at all.

38. On June 10, 2021, Defendant Minor forwarded Ms. DeLaura a text stating that she and Ms. Young were "mandated reporters." The text stated that they were "concerned." The text further demanded that Plaintiff text back within ten minutes, or the Bristol Police would be called to Plaintiff's home for a wellness check. (Ex. 1.)

39. Neither Defendant Minor nor Ms. Young had had any contact with Plaintiff for days, and had otherwise been given no reason to believe that Plaintiff was in any jeopardy.

40. Plaintiff in fact was under no distress or need of wellness check or any other care.

41. Plaintiff had been asleep when the text arrived, and therefore she did not text Defendant Minor or Ms. Young.

42. Defendant Minor called the police to Plaintiff's home as indicated in the June 10, 2021 text.

43. On or about June 16, 2021, Plaintiff was required to attend another Zoom meeting with Defendant Minor and Ms. Young.

44. At that meeting, Defendant Minor announced that Plaintiff was being removed from the practicum.

45. When Plaintiff asked for a reason, Defendant Minor declared: "I don't trust you to be okay."

46. Defendant then smiled, and announced that Plaintiff should withdraw from any other class she was taking during the summer session.

47. Defendant Minor eventually decided to let Plaintiff take the academic class for which she had registered over the summer.

48. Because practicum is only offered over the summer, and because practicum is a prerequisite to internships, Plaintiff's graduation will be delayed by at least one year.

49. Defendant Minor did not provide any specifics as to the reasons why Plaintiff was removed from practicum.

50. Defendant Minor referenced a need for "remediation" for Plaintiff to take practicum in the future, but provided no specifics of what that remediation will consist of.

51. Prior to enrolling in the Holistic Counseling program, Plaintiff had been a Doctor of Acupuncture, and had practiced in that field for twenty years.

52. Faced with at least one year's delay before being able to complete the Holistic Counseling program, Plaintiff sought work as an acupuncturist.

53. Plaintiff was offered the opportunity to provide acupuncturist services at South County Mental Health.

54. South County Medical Health has served as a clinical site for the Holistic Counseling program.

55. Defendant Minor learned that Plaintiff planned to be providing acupuncturist services at South County Mental Health.

56. Defendant Minor contacted South County Mental Health and told them not to retain Plaintiff.

57. As a result, South County Mental Health withdrew its offer to allow Plaintiff to provide acupuncturist services.

58. Over the week of July 15, 2021, Plaintiff attempted to obtain copies of her student record.

59. Plaintiff was denied copies of her student record except for her transcript.

60. Plaintiff was told that she could only do an in-person review of the remainder of her student record.

61. On or about July 22, 2021, Plaintiff, through her counsel, wrote to Salve Regina's administration, and advised them of Defendant Minor's activities. (Ex. 2.)

62. Said July 22, 2021 correspondence cautioned Salve Regina that among other things, Plaintiff had suffered disability discrimination.

63. Said July 22, 2021 correspondence invited Salve Regina administration to contact Plaintiff's counsel with a view towards resolution and/or possibly permitting Plaintiff to complete her studies on time.

64. By letter dated July 28, 2021, Salve Regina, through its Vice President for Administration and Chief Financial Officer, William B. Hall, responded. (Ex. 3.)

65. Said July 28, 2021 correspondence claimed to have documentation that ". . . refute[s] most, if not all the claims in your letter."

66. Said July 28, 2021 correspondence noted that Hall had reviewed extensive documentation, including that which allegedly described ". . . issues with the student's performance and behavior at the practicum."

67. Said July 28, 2021 correspondence claimed that Hall had "23 other corrections of misstatements" in the July 22, 2021 correspondence.

68. By letter dated August 4, 2021, Plaintiff's counsel asking for the documentation referenced in the July 28, 2021 correspondence, as well as the specific facts upon which Hall

rested in support of his claim that the July 22, 2021 correspondence had contained misstatements. (Ex. 4.)

69. When Plaintiff's counsel e-mailed said August 4, 2021 correspondence to Hall, she initially received an automatic "out of office" reply, stating that Hall was on vacation. (Ex. 5.)

70. Several minutes later, Plaintiff's counsel received an e-mail which Hall sent from his cell phone: "Nothing will be forthcoming. Please proceed accordingly. Thanks." (Ex. 6.)

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT and
## AMERICANS WITH DISABILITIES ACT

71. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

72. The Americans with Disabilities Act prohibits discrimination on the basis of disability in public accommodations.

73. The Defendant, Salve Regina University, is a "public accommodation" as defined in 42 U.S.C. § 12181(7), so as to be covered by the mandates of the ADA.

74. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability in programs receiving federal financial assistance.

75. The Defendant, Salve Regina University, receives federal financial assistance, as defined by 29 U.S.C. § 794, and, as such, may not discriminate against a person because of disability.

76. Plaintiff was a qualified individual with a disability pursuant to both Section 504 and the ADA.

77. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program.

78. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because of her disability.

79. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because she was perceived as disabled.

80. As a direct and proximate result of the wrongful actions of Defendant Salve Regina, Plaintiff has suffered financial harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

81. Said actions of Defendant Salve Regina were done with conscious disregard to Plaintiffs' legal rights.

82. Said actions of Defendant Salve Regina were wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiff demands judgment against Defendant Salve Regina, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT II – <br> RHODE ISLAND CIVIL RIGHTS ACT

83. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

84. Rhode Island Gen. Laws § 42-112-1 *et seq*. provides, in pertinent part:

(a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

85. Plaintiff is a disabled person and has a disability covered by R.I.G.L. § 42-112-1 *et seq*.

86. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program.

87. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because of her disability.

88. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because she was perceived as disabled.

89. As a direct and proximate result of the wrongful actions of Defendant Salve Regina, Plaintiff has suffered financial harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

90. Said actions of Defendants were done with conscious disregard to Plaintiffs' legal rights.

91. Said actions of Defendants were wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiff demand judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT III – <br> RHODE ISLAND CIVIL RIGHTS OF PEOPLE WITH DISABILITIES ACT

92. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

93. Defendant, Salve Regina, is an entity licensed and/or regulated by the state, and/or has received financial assistance from the State.

94. Plaintiff was "an otherwise qualified person with a disability" pursuant to R.I. Gen. Laws § 42-87-1 *et seq.*

95. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program.

96. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because of her disability.

97. Plaintiff was denied the opportunity to participate and/or benefit from the practicum and internship portions of Salve Regina's Holistic Counseling program because she was perceived as disabled.

98. As a direct and proximate result of the wrongful actions of Defendant Salve Regina, Plaintiff has suffered financial harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

99. Said actions of Defendant Salve Regina were done with conscious disregard to Plaintiffs' legal rights.

100. Said actions of Defendant Salve Regina were wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiff demands judgment against Defendant Salve Regina, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT IV –
## BREACH OF CONTRACT

101. Plaintiff re-alleges all averments contained in the paragraphs above as if fully restated herein.

102. Plaintiff had a contract with Salve Regina University.

103. Plaintiff's contract with Defendant Salve Regina University contained an implied covenant of good faith and fair dealing.

104. Defendant Salve Regina University has violated said implied covenant of good faith and fair dealing.

105. As a result of the breach of the contract, Plaintiff has suffered and will continue to suffer monetary damages.

106. Given the facts of this matter, there is no "justiciable issue of either law or fact," thus entitling Plaintiff to an award of attorney's fees pursuant to R.I.G.L. § 9-1-45.

WHEREFORE, Plaintiff demands judgment against the Defendant Salve Regina University, including but not limited to compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE

107. Plaintiff incorporates the averments made in the preceding Paragraphs as if fully restated therein.

108. Plaintiff had a contractual relationship with Salve Regina.

109. Plaintiff derived economic advantage from her relationship with Salve Regina.

110. Plaintiff had an expectation of a continued contractual relationship with Salve Regina, as well as continued economic advantage flowing from said relationship.

111. Defendant Minor knew or should have known of the contractual relationship between Plaintiff and Salve Regina, as well as the economic advantage flowing from said relationship.

112. Defendant Minor knew or should have known of the economic advantage derived by Plaintiff from her relationship with Salve Regina.

113. Defendant Minor willfully and deliberately interfered with the contractual relationship between Plaintiff and Salve Regina.

114. Defendant Minor willfully and deliberately interfered with the economic advantage derived from Plaintiff's relationship with Salve Regina.

115. Defendant Minor used improper means, and had improper motives in tortiously interfering with Plaintiff's relationship with Salve Regina.

116. Defendant Minor used improper means, and had improper motives in tortiously interfering with Plaintiff's relationship with Salve Regina.

117. As a direct and proximate result of the illegal activity of Defendant Minor, Plaintiff has suffered and will continue to suffer damages, including pecuniary and non-pecuniary losses, attorney's fees and costs.

118. The actions of Defendant Minor were willful, malicious, wicked, and wanton and for the good of society must be punished.

WHEREFORE, Plaintiff demands judgment against Defendant Minor, including but not limited to compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE

119. Plaintiff incorporates the averments made in the preceding Paragraphs as if fully restated therein.

120. Plaintiff had a contractual relationship with South County Mental Health.

121. Plaintiff derived economic advantage from her relationship with South County Mental Health

122. Plaintiff had an expectation of a continued contractual relationship with South County Mental Health, as well as continued economic advantage flowing from said relationship.

123. Defendant Minor knew or should have known of the contractual relationship between Plaintiff and South County Mental Health.

124. Defendant Minor knew or should have known of the economic advantage derived by Plaintiff from her relationship with South County Mental Health.

125. Defendant Minor willfully and deliberately interfered with the contractual relationship between Plaintiff and South County Mental Health.

126. Defendant Minor willfully and deliberately interfered with the economic advantage derived from Plaintiff's relationship with South County Mental Health.

127. Defendant Minor used improper means, and had improper motives in tortiously interfering with Plaintiff's relationship with South County Mental Health.

128. Defendant Minor used improper means, and had improper motives in tortiously interfering with Plaintiff's contractual relationship with South County Mental Health.

129. As a direct and proximate result of the illegal activity of Defendant Minor, Plaintiff has suffered and will continue to suffer damages, including pecuniary and non-pecuniary losses, attorney's fees and costs.

130.  The actions of Defendant Minor were willful, malicious, wicked, and wanton and for the good of society must be punished.

WHEREFORE, Plaintiff demands judgment against Defendant Minor, including but not limited to compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

        Plaintiff,
        By her attorneys

        /s/ Stephen M. Robinson

        /s/ Vicki J. Bejma
        Vicki J. Bejma #6498
        Robinson & Clapham
        123 Dyer Street, Suite 135
        Providence, RI  02903
        (401) 331-6565
        (fax) 331-7888
        vbejma@smrobinsonlaw.com